**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| COREY D. OGDEN,<br>　　　　　Appellant, | DOCKET NUMBER<br>PH-844E-18-0305-I-1 |
| 　　　v. | |
| OFFICE OF PERSONNEL<br>　MANAGEMENT,<br>　　　　　Agency. | DATE: January 27, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Corey D. Ogden, Rawlings, Maryland, pro se.

Albert Pete Alston, Jr., Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## FINAL ORDER

¶1　　The appellant has filed a petition for review of the initial decision, which affirmed the final decision of the Office of Personnel Management (OPM) denying his application for disability retirement under the Federal Employees' Retirement System (FERS). For the reasons discussed below, we GRANT the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

appellant's petition for review, REVERSE the initial decision, and DO NOT SUSTAIN OPM's final decision.

## BACKGROUND

¶2      The appellant served as a FERS-covered Social Insurance Specialist (Claims Representative) for the Social Security Administration from July 19, 2009, to July 18, 2012, and again beginning March 23, 2014. Initial Appeal File (IAF), Tab 6 at 127, 130.  The duties of this position include adjudicating applications for Social Security benefits and providing guidance and assistance to applicants.  *Id*. at 111.  On or about October 3, 2016, the appellant filed an application for disability retirement with a claimed condition of bipolar disorder.  *Id*. at 67-72.  On April 30, 2018, OPM issued a final decision denying the appellant's disability retirement application on the basis that the appellant had not shown that he was disabled from working.  *Id*. at 5-11.

¶3      The appellant filed a Board appeal challenging OPM's decision. IAF, Tab 1.  After a hearing, the administrative judge issued an initial decision affirming OPM's final decision.  IAF, Tab 16, Initial Decision (ID).  He agreed with OPM that the appellant had not made the requisite showing of disability. ID at 7-8.  The administrative judge acknowledged the appellant's history with bipolar disorder, but he found that the appellant failed to provide sufficient medical documentation to show that he was disabled from working as a Claims Representative.  ID at 4-8.

¶4      The appellant has filed a non-substantive petition for review, expressing frustration with the disability retirement application and appeals process. Petition for Review (PFR) File, Tab 1.  OPM has not filed a response.

## ANALYSIS

¶5      The petition for review provides no basis to disturb the initial decision. *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133-34 (1980) (recognizing that mere disagreement with an administrative judge's findings of

fact and conclusions of law does not warrant full review by the Board); *see generally* 5 C.F.R. § 1201.115 (setting forth the regulatory bases for granting a petition for review). To the extent that the appellant is arguing that the administrative judge's decision was discriminatory, his unsupported assertion of discrimination is insufficient to rebut the presumption of honesty and integrity that accompanies the administrative judge. *See Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002). The mere fact that the administrative judge ruled against the appellant does not establish bias. *Thompson v. Department of the Army*, 122 M.S.P.R. 372, ¶ 29 (2015). Nevertheless, considering the appellant's pro se status, his psychological conditions, and the strong interest in reaching the correct result in this disability retirement appeal, we have conducted a full review of the record. *See Wutke v. Office of Personnel Management*, 67 M.S.P.R. 523, 527-28 (1995) (declining to decide a retirement appeal against an appellant based on "strict application of the adversarial model of adjudication").

¶6    An applicant for disability retirement benefits bears the burden of proving his entitlement to those benefits by preponderant evidence. *Henderson v. Office of Personnel Management*, 109 M.S.P.R. 529, ¶ 8 (2008); 5 C.F.R. § 1201.56(b)(2)(ii). To qualify for disability retirement benefits under FERS, an individual must meet the following requirements: (1) he must have completed at least 18 months of creditable civilian service; (2) he, while employed in a position subject to FERS, must have become disabled because of a medical condition resulting in a deficiency in performance, conduct, or attendance, or if there is no such deficiency, the disabling medical condition must be incompatible with either useful and efficient service or retention in the position; (3) the disabling medical condition must be expected to continue for at least 1 year from the date the disability retirement benefits application is filed; (4) accommodation of the disabling medical condition in the position held must be unreasonable; and (5) he must not have declined a reasonable offer of

reassignment to a vacant position. 5 U.S.C. § 8451(a); *Henderson*, 109 M.S.P.R. 529, ¶ 8; 5 C.F.R. § 844.103(a). In determining an appellant's entitlement to disability retirement, the Board will consider all pertinent evidence, including objective clinical findings, diagnoses and medical opinions, subjective evidence of pain and disability, and evidence relating to the effect of the appellant's condition on his ability to perform the duties of his position. *Dunn v. Office of Personnel Management*, 60 M.S.P.R. 426, 432 (1994).

¶7       In this case, it is undisputed that the appellant satisfies the first and fifth requirements for a FERS disability retirement. ID at 7; *see* IAF, Tab 6 at 52-53, 115-116. The administrative judge, however, found that the appellant failed to show that he satisfies the second requirement because he failed to establish that he became disabled resulting in deficiencies in performance, conduct, or attendance, or that his bipolar disorder is incompatible with either useful and efficient service or retention in his position. ID at 7. However, the record shows that the appellant was exhibiting conduct and attendance deficiencies at the time of his disability retirement application. Specifically, the Supervisor's Statement submitted as part of the appellant's disability retirement package indicates that the appellant's conduct became unsatisfactory in April 2015, based on such behavior as using inappropriate language, slamming doors, having outbursts, and staring out the window talking to himself. IAF, Tab 6 at 63-64. In addition, the agency issued the appellant a letter of reprimand on September 21, 2016, for continued disruptive behavior and failure to follow management directives. *Id.* at 97-100. The Supervisor's Statement also indicates that the appellant's attendance became unacceptable in March 2016, and that his excessive absences have increased other employees' workloads and affected the agency's service to the public. *Id.* at 63. Furthermore, it appears to be undisputed that the appellant was continuously absent from work since September 22, 2016, and that the agency issued him a notice of proposed removal for failure to be regular in attendance. Hearing Recording (HR) at 3:30, 6:20 (testimony of the appellant).

Based on these facts, we find that the appellant has exhibited significant conduct and attendance deficiencies in his employment.[2]

¶8     The administrative judge acknowledged the appellant's service deficiencies, but he found that the appellant failed to establish the requisite connection between these deficiencies and his bipolar disorder. ID at 3, 7. Specifically, the administrative judge found that none of the appellant's proposed disability onset dates, March 31, 2016, September 23, 2016, or March 31, 2017, corresponded with the onset of his service deficiencies, which according to the Supervisor's Statement were April 2015, for conduct and March 8, 2016, for attendance. ID at 7; IAF, Tab 6 at 5-6, 63-64, 68; HR at 55:00 (testimony of the appellant). The administrative judge further noted that the appellant's service deficiencies did not begin until well after he was first diagnosed with bipolar disorder in June 2013. ID at 7; IAF, Tab 7 at 19-20.

¶9     However, considering the evidence as a whole, we find that the appellant's medical history does roughly correlate with his service and attendance deficiencies. As an initial matter, we find that the various dates of onset that the appellant provided are not particularly probative, as he expressed some confusion about how to determine the appropriate date. HR at 54:45 (testimony of the appellant). Far more probative is the medical documentation, which unambiguously shows that the appellant's psychiatric problems first presented on or about June 14, 2013, when he was involuntarily committed to a hospital for 5 days, displaying psychotic symptoms that manifested as emotional volatility, depressed mood, paranoia, and delusions. IAF, Tab 7 at 4-30. Upon discharge,

---

[2] There is insufficient evidence for us to conclude that the appellant experienced a performance deficiency. The supervisor's narrative statements on the appellant's rating and performance documents reflect that the appellant had been counseled repeatedly for disruptive and otherwise inappropriate behavior. IAF, Tab 6 at 117, 120. However, the most recent performance evaluation in the record (fiscal year 2015) reflects a summary rating of "Successful Contribution," with the same successful rating in all critical elements, including "Interpersonal Skills." *Id*. at 120.

the appellant was diagnosed with cannabis dependence and bipolar disorder, mixed.[3] *Id.* at 19-20. Shortly thereafter, on July 30, 2013, the appellant was involuntarily committed again for 1 week, exhibiting similar symptoms. *Id.* at 42-88. Notably, these two episodes occurred during the appellant's break in service between July 28, 2012, to March 23, 2014. Tab 6 at 127, 130. Because the appellant was not employed in Federal service at the onset of his bipolar disorder, there is unsurprisingly no corresponding service deficiency.

¶10    After the appellant's first admission to the hospital, he followed up with outpatient psychiatric treatment, where he was prescribed medication and diagnosed with cannabis dependence and bipolar I disorder. *Id.* at 31-41. After the appellant's second admission to the hospital, he was prescribed new medications and continued to follow up regularly in an outpatient setting, during which his prescribed medication was changed again. *Id.* at 85, 89-100. The period that followed appears to have been a good one for the appellant; the Social Security Administration reinstated him during this time, and his medical records indicate that he was compliant with treatment, relatively stable, and doing much better overall. IAF, Tab 6 at 127, Tab 7 at 89-100. However, this all changed on June 9, 2015, when the appellant, having gone off his medications, was admitted to the hospital for the third time, this time displaying suicidal ideation and "bizarre behavior." *Id.* at 101-14, 125. This acute episode, the first since the appellant's March 23, 2014 reinstatement, roughly corresponds with the April 2015 onset of his conduct deficiency as reported by his supervisor. IAF, Tab 6 at 64. We further note that the Supervisor's Statement itself strongly suggests that the appellant's conduct deficiency was the product of mental illness. According to the supervisor, around

---

[3] At the hearing, OPM questioned the appellant about certain medical documentation in an attempt to elicit testimony that the appellant's symptoms were caused by cannabis abuse. HR at 1:01:25 (testimony of the appellant). However, our review of the documentation shows that the treating physician *ruled out* substance-induced mood disorder due to cannabis. IAF, Tab 7 at 124.

April 2015, the appellant's demeanor changed, with occasional outbursts, crying, inability to remain at work, inability to control his emotions, walking around, talking to himself, and speaking loudly. *Id*. Both the sudden onset and the nature of this behavior, which appears to be a more mild form of the behavior that led to the appellant's eventual June 9, 2015 hospitalization, suggest to us that his conduct deficiency was most likely the product of his bipolar disorder. IAF, Tab 6 at 64, Tab 7 at 101-02, 104, 113.

¶11 There is nothing in the record to suggest that the appellant availed himself of outpatient treatment between his June 15, 2015 discharge and his next hospitalization on March 27, 2016, during which he displayed manic symptoms with suicidal and homicidal ideation. IAF, Tab 7 at 117. The medical documentation does show that the appellant had not taken his medication for more than a year at that point because he did not think that he needed it. *Id*. at 125. The appellant was discharged 3 days later, with instructions to resume his medication and to follow up with outpatient primary and psychiatric care. *Id*. at 124, 126. Just as the beginning of the appellant's conduct deficiency roughly correlates with his June 2015 hospitalization, the beginning of his attendance deficiency roughly correlates with his March 2016 hospitalization. IAF, Tab 6 at 63. The record shows that, between March 8 and October 14, 2016, the appellant used 228 hours of annual leave, 152 hours of sick leave, and 10 hours of leave without pay, although the exact dates and reasons for the leave are not a part of the record. *Id*. Nevertheless, given the timing involved, we find that the appellant's excessive absences were, more likely than not, at least partly attributable to his bipolar disorder.

¶12 After the appellant was discharged from his fourth hospitalization, it appears that he resumed regular psychiatric outpatient care and was compliant with his medications, right up until he stopped coming to work on September 22, 2016. IAF, Tab 7 at 127-28. It appears that the appellant's avoidance of work was occasioned by his receiving the September 21, 2016

written reprimand for disruptive behavior, which included pacing, speaking loudly, talking to himself, and using profanity. IAF, Tab 6 at 97-100. Nevertheless, the appellant continued to be compliant with treatment with the same psychiatrist after that date, until December 2016, when he moved out of state and had to change doctors. IAF, Tab 7 at 129-33. The appellant then sought the services of a new psychiatrist, who believed that the appellant would benefit from a change in medication. *Id*. at 135-38. The appellant refused, stating that psychiatry was invented by Nazis for brainwashing, and that he would only take the medication that he was currently prescribed. *Id*. at 135. Because the appellant and this psychiatrist could not agree on a treatment plan, the appellant was given a list of other providers, one of whom he began seeing on March 27, 2017. *Id*. at 135, 141. It appears that the appellant's symptoms began to improve at this time. His new psychiatrist opined that he was doing well on his current medications and that these medications as well as therapy should be continued. *Id*. at 141-43, 150, 153. There is no indication of noncompliance with this psychologist's recommendations.[4]

¶13 Although, as explained above, we find a causal connection between the appellant's service deficiencies and his bipolar disorder, the Board has long held that evidence of the degree to which symptoms can or cannot be controlled is also relevant in determining the existence of a disabling condition. *See Wilkey-Marzin v. Office of Personnel Management*, 82 M.S.P.R. 200, ¶ 15 (1999); *Jolliffe v. Office of Personnel Management*, 23 M.S.P.R. 188, 190 (1984), *aff'd*, 785 F.2d 320 (Fed. Cir. 1985) (Table). Voluntary refusal to accept facially reasonable treatment will bar entitlement to a disability retirement annuity. *Johnson v. Office of Personnel Management*, 87 M.S.P.R. 192, ¶ 22 (2000). In this regard, we note that the appellant's condition seems to be amenable to medication, at least to a degree, as it appears that he does better while on medication and has not

---

[4] It would appear that the appellant changed his opposition to medication because this new psychiatrist eventually made some adjustments. IAF, Tab 7 at 143.

needed to be hospitalized during periods of compliance.  *See supra*, ¶¶ 9-12. However, even after the appellant began taking his medicine again following his hospitalization in March 2016, his conduct and attendance deficiencies continued. IAF, Tab 6 at 63-64, 97-99, 102-03.  Although his behavior during this latter period has not been sufficiently severe to warrant further hospitalization, it remains unacceptable for the workplace.  *Id*. at 97-99, 102-03.

¶14     The evidence described above is consistent with the appellant's psychiatrist's statement for the appellant's social security disability application, in which he rated the appellant's impairment in responding appropriately to changes in the workplace and interacting appropriately with coworkers as "moderate" and his impairment in interacting appropriately with supervisors and the public as "extreme."  *Id*. at 30.  Although the psychiatrist's assessment could perhaps have been more comprehensive, nothing in the law requires that a single provider tie all of the evidence of disability together.  *Henderson v. Office of Personnel Management*, 117 M.S.P.R. 313, ¶ 19 (2012).  When, as here, there is a significant amount of medical evidence from various providers, subjective testimony from the appellant, and documentation by officials from the appellant's employing agency all consistently pointing to pervasive behavioral impairments attendant to the appellant's claimed and well-documented disability, the record is sufficient for the Board to conclude that his condition precludes him from rendering useful and efficient service in his position.  *See id*., ¶¶ 19-20.  There is no suggestion that the appellant is a malingerer, and the evidence is consistent that his bipolar disorder causes conduct problems that are wholly inappropriate for the workplace, particularly in a customer service setting.  *See id*., ¶ 21.

¶15     In finding that the appellant failed to establish that he suffers from a disabling condition, the administrative judge considered notes that an agency official took at a February 1, 2017 reasonable accommodation meeting, which reflect that the appellant told the agency official that his psychiatrist did not recommend any accommodations and wanted him just to do his job.  ID at 7;

IAF, Tab 6 at 115-16. However, assessing this triple-hearsay evidence according to the factors set forth in *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981), we find that it is highly unreliable.[5] First, we find no indication that either the agency official who wrote these notes or the psychiatrist who supposedly instructed the appellant to return to work were unavailable to testify.[6] Second, the notes are unsworn, and they were not signed by the official who wrote them. IAF, Tab 6 at 115-16. Third, OPM gave no explanation for failing to obtain a signed, sworn statement, although to be fair, it is the appellant's burden on this matter and these notes do not appear to have been a key part of OPM's case. Regarding the fourth factor, there is no indication that the agency official conducting the interview had any bias one way or the other. As to the fifth, sixth, and seventh *Borninkhof* factors, the idea that the appellant was capable of "just do[ing] his job" is inconsistent with the great weight of the evidence described above, and the psychologist's alleged statement to this effect is nowhere reflected in her notes of the appointment during which she allegedly said it. IAF, Tab 7 at 135-37. Regarding the eighth and final factor, there is no reason to doubt the credibility of the agency official at the time she recorded the appellant's statement, but the appellant's credibility at the time is highly suspect, considering that earlier that day he had refused adjustments to his medication out of paranoia about Nazis and brainwashing. IAF, Tab 6 at 116, Tab 7 at 135. Moreover, even putting all this serious and well-founded doubt aside and assuming that the psychiatrist actually made the statement attributed to her, we would find that it is of little weight because she only saw the appellant one time during a single brief and acrimonious office visit. IAF, Tab 6 at 115-16; HR at 1:03:05 (testimony of the appellant); *see Tan-Gatue v. Office of Personnel*

---

[5] *Borninkhof* factors aside, triple hearsay is, by its very nature, "attenuated and highly unreliable." *Cooper v. United States*, 639 F.2d 727, 730 (Ct. Cl. 1980).

[6] The appellant himself was available and did testify at the hearing, but not as to the truth or accuracy of these notes.

*Management*, [90 M.S.P.R. 116](#), ¶ 11 (2001) (finding that medical conclusions based on long familiarity with a patient are of greater weight than those based on a brief association or single examination), *aff'd*, 52 F. App'x 511 (Fed. Cir. 2002). For these reasons, we find it inappropriate to assign any serious weight to this evidence.

¶16      The administrative judge also noted that the appellant's current psychiatrist is of the opinion that the appellant himself is the best arbiter of when he is ready to return to work. ID at 7-8; HR at 34:20 (testimony of the appellant). However, we do not interpret this as a clinical opinion that the appellant is, in fact, ready to return to work at this time or as a prognosis that he will be ready to do so at any ascertainable date in the future.

¶17      Finally, at the hearing, OPM identified several notes from doctors' appointments, reflecting that the appellant was doing well on the dates of the appointments. HR at 1:02:25 (testimony of the appellant); IAF, Tab 7 at 135-38, 141. As an initial matter, although the appellant might have been doing well on those dates relatively speaking, we do not read these appointment notes as reflecting an opinion that the appellant was doing well enough to return to work. Furthermore, bipolar I disorder is episodic in nature. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 123-31 (5th ed. 2013) (DSM V). The mere fact that the appellant might have lacked the most severe symptoms of his condition on a given date does not mean that he had recovered from his condition or was otherwise not currently disabled. *See Group v. Office of Personnel Management*, [109 M.S.P.R. 5](#), ¶ 12 (2008). Considering the record as a whole, we find that the appellant has shown by preponderant evidence that he suffers from a disabling condition that resulted in a deficiency in conduct and attendance.

¶18      Regarding the third element for a FERS disability retirement claim, there is no evidence in the record that any of the appellant's doctors expect a permanent recovery at any time. As noted above, bipolar I is episodic; more than 90% of

individuals who have a single manic episode go on to have recurrent mood episodes. DSM V at 130. We therefore find that the appellant's condition would have been expected to last for more than a year from the date of his October 3, 2016 disability retirement application.

¶19      Finally, regarding the fourth element of the appellant's disability retirement claim, our review of the record shows that there was no reasonable accommodation for his bipolar disorder. The agency attempted to accommodate the appellant by providing him frequent breaks, generous leave approval, access to its Employee Assistance Program, and headphones to block out noise, but these accommodations proved to be ineffective. IAF, Tab 6 at 63-64; HR at 57:25 (testimony of the appellant). At the hearing, OPM went through several of the appellant's medical documents and noted that his psychiatrists did not recommend accommodations for him. HR, at 1:01:00, 1:09:30 (testimony of the appellant); IAF, Tab 7 at 117-26, 135-38, 153. To the extent that OPM is suggesting that the appellant's doctors failed to recommend accommodations because they believed that he could work without them, we find that such an interpretation is unwarranted. The more likely explanation, based on the record before us, is that they did not believe that the appellant's condition could be accommodated at all. In any event, the record shows that the appellant's employing agency offered him several accommodations and that that the appellant used those accommodations to no avail. There is no indication that the appellant ever declined any accommodation offered, no doctor or agency official has suggested any accommodation that has not been tried, and no such potential accommodations are apparent to us. Mindful of the difficulties inherent in proving a negative, we find that the record in this case is more than sufficient to show that reasonable accommodation of the appellant's bipolar disorder was not possible. *See Detwiler v. Office of Personnel Management*, 90 M.S.P.R. 77, ¶ 13 (2001); *see also Chavez v. Office of Personnel Management*, 6 M.S.P.R. 404, 416 (1981) (finding it "usually impractical" for a party to prove a negative).

¶20    For the reasons explained above, we find that the appellant meets all of the criteria for a FERS disability retirement and that his application must therefore be granted.

**ORDER**

¶21    We ORDER OPM to grant the appellant's application for disability retirement.  OPM must complete this action no later than 20 days after the date of this decision.

¶22    We also ORDER OPM to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  We ORDER the appellant to provide all necessary information OPM requests to help it carry out the Board's Order.  The appellant, if not notified, should ask OPM about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶23    No later than 30 days after OPM tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that OPM did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that OPM has not fully carried out the Board's Order, and should include the dates and results of any communications with OPM.  5 C.F.R. § 1201.182(a).

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.

You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions to provide a comprehensive summary of all available review options.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and you wish to challenge the Board's rulings on <u>your whistleblower claims only, excluding all other issues</u>, then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    /s/ for
                                                  Jennifer Everling
                                                  Acting Clerk of the Board

Washington, D.C.